**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| VINCENT BARTOLD | : | Case No. 3:14-cv-865-CSH |
| | : | |
| Plaintiff | : | |
| v. | : | |
| | : | |
| WELLS FARGO BANK, N.A. | : | |
| | : | |
| Defendant | : | August 11, 2014 |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**

Connecticut Fair Housing Center
Attorneys for Plaintiff
221 Main Street, 4th Floor
Hartford, CT 06106
(860) 263-0726

## <u>TABLE OF CONTENTS</u>

**Introduction**................................................................................................................3

**Statement of Facts**......................................................................................................4

**Argument**....................................................................................................................8

   I.  Legal Standard for Deciding a Motion to Dismiss ................................................8

   II.  Mr. Bartold's CUTPA and Negligent Misrepresentation Claims Are Not Time-Barred........9

     A.  Mr. Bartold Alleges Multiple CUTPA Violations Within the Statute of Limitations Period.........................................................................................9

     B.  Mr. Bartold Has Sufficiently Pled That the Continuing Course of Conduct Doctrine Tolls the Statute of Limitations for CUTPA Violations Prior to May 14, 2011. ............11

     C.  Mr. Bartold's Negligent Misrepresentation Claim Is Not Time-Barred ........................15

   III.  Mr. Bartold Has Sufficiently Pled a CUTPA Claim Against Wells Fargo.........................16

   IV.  Mr. Bartold Alleges Multiple Breaches of Contract...........................................18

   V.  HUD Is Merely the Mortgage Insurer and Is Not a Necessary Part to this Action Under Rule 19(a)...............................................................................21

**Conclusion** ................................................................................................................24

## INTRODUCTION

This action arises out of defendant Wells Fargo's failure to make monthly payments to plaintiff Vincent Bartold in accordance with a Home Equity Conversion Mortgage ("HECM"), a reverse mortgage loan for elderly homeowners insured by the Federal Housing Administration ("FHA") of the Department of Housing and Urban Development ("HUD").   A reverse mortgage is a form of equity release in which a mortgage lender makes payments to a borrower based on the borrower's accumulated equity in the home.  Repayment is not triggered until certain qualifying events, typical the death of the borrower or the sale of the home.

In the loan documents, Wells Fargo agreed to make monthly payments to Mr. Bartold of $600 for life pursuant to a "modified tenure" payment plan.  Despite clear evidence, Wells Fargo claimed until approximately December 2013 that the loan documents provided for $600 monthly payments for only a limited term of years pursuant to a "modified term" payment plan, and it has repeatedly threatened to terminate payments.  Even after Wells Fargo acknowledged its error, it has refused to correct the account or properly calculate payments of the loan proceeds.  Mr. Bartold has brought claims against Wells Fargo for breach of contract, negligent misrepresentation, and violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b.  Wells Fargo has now moved to dismiss the entirety of Mr. Bartold's complaint or, in the alternative, has moved to order the joinder of the Secretary of the Department of Housing and Urban Development as a necessary party under Rule 19(a).

Wells Fargo's argument that Mr. Bartold's complaint should be dismissed is without merit.  His CUTPA and negligent misrepresentation claims are not time-barred, and his complaint sufficiently alleges facts supporting CUTPA violations and a claim for breach of

contract.  The Secretary of the Department of Housing and Urban Development is not a

necessary party to this action, so joinder is improper under Rule 19(a).

### STATEMENT OF FACTS

A HECM is a reverse mortgage that is federally insured by the Department of Housing

and Urban Development and subject to HUD's regulations promulgated in accordance with 12

U.S.C. § 1715z-20 and found at 24 C.F.R. § 206 (hereinafter "HUD regulations").  A HECM

reverse mortgage enables older homeowners to convert the equity in their home to cash

payments without having to move out or make monthly loan payments.  Borrowers pay monthly

insurance premiums out of the loan proceeds, and HUD guarantees that the lender will be repaid

up to specified limits.  A HECM reverse mortgage typically does not mature or become due until

the mortgagor dies, sells the property, or moves out.  The purpose of the HECM insurance

program is to "meet the special needs of elderly homeowners by reducing the effect of …

economic hardship."  12 U.S.C § 1715z-20.  It does this by insuring loans so as to minimize

private lender's risk and encourage them to make reverse mortgage loans to elderly homeowners.

HUD regulations provide for five payment plans through which a reverse mortgage

borrower can elect to receive their cash payments: (1) "tenure," where equal monthly payments

are made to the borrower for life so long as he lives in the property and the loan is not due; (2)

"term," where equal monthly payments are made to the borrower for a fixed terms of months

chosen by the borrower; (3) "line of credit," where payments are made only at the request of the

borrower; (4) "modified tenure," which combines a monthly tenure payment with a line of credit;

and (5) "modified term," which combines a monthly term payment with a line of credit.  24

C.F.R. §§ 206.17; 206.19.  The payment plan a borrower chooses is specified in the loan

documents.  24 C.F.R. §§ 206.17(a); 206.25; 206.27(b).  The borrower, not the lender, may

subsequently choose to change the payment plan.  24. C.F.R. § 206.26.  If the borrower chooses to change the payment plan, then the lender must properly calculate the new payment terms, including the payment amount, in accordance with HUD regulations and the loan documents.  24 C.F.R. §§ 206.26, 206.25.  The "paramount servicing responsibility [of reverse mortgage lenders] is the need to make timely payments in full as required by the mortgage."  24 C.F.R. § 206.201.

Plaintiff Vincent Bartold is the owner of the home at 260 Rockwell Avenue in Stratford, Connecticut, which was deeded to him by his mother in 2005 and was unencumbered by any mortgage liens.  Compl., Count I, ¶¶ 10-12.  Mr. Bartold is elderly, has disabilities, and relies on a fixed income consisting of Supplemental Security Income (SSI).  *Id.* at ¶14.  After seeing a television advertisement, he decided to obtain a reverse mortgage loan so as to convert his substantial equity in his home into monthly cash payments.  *Id.* at ¶¶ 15-18.  He had never previously applied for or obtained any type of home mortgage loan.  *Id.* at ¶ 13.

In the loan documents for the HECM reverse mortgage loan signed on October 26, 2009, Mr. Bartold and defendant Wells Fargo agreed that the loan proceeds would be paid to Mr. Bartold under a "modified tenure" payment plan providing for monthly payments of $600 per month for life, so long as he remained living in the property.  *Id.* at ¶¶ 29-37 and Exhibits A, B, and C.

Beginning in November 2009, Wells Fargo inexplicably claimed that the loan documents provided for a "modified term" payment plan for a limited term of years, not a "modified tenure" one with payments for life.  Approximately one year after origination, Mr. Bartold noticed that his monthly loan statements from Wells Fargo dating back to November 2009 inaccurately described his payment plan as "modified term."  *Id.* at ¶ 39-40.  Mr. Bartold contacted Wells

Fargo to ask if his payments were being made according to the "modified tenure" plan agreed to in the loan documents. *Id.* at ¶ 41. Wells Fargo repeatedly stated that the monthly payments were being made on a "modified term" schedule, not a "modified tenure" schedule, and that Wells Fargo would entirely cease making any payments after a limited term of years. *Id.* at ¶¶ 42-43. At no point had Mr. Bartold requested that Wells Fargo change his payment plan from "modified tenure" to "modified term." *Id.* at ¶ 44. Even though Mr. Bartold repeatedly notified Wells Fargo that it had made an error, Wells Fargo refused to correct it and continued to insist that his payment plan was "modified term." *Id.* at ¶¶ 45-49.

Wells Fargo threatened to terminate Mr. Bartold's monthly payments and told him his only option to continue receiving payments was to reduce the amount he received each month below $600. *Id.* at ¶ 50. Even then, Wells Fargo told Mr. Bartold he would only receive payments of $500 for 16 years and then would receive nothing. *Id.* Mr. Bartold feared for his future and his continued ability to live independently in his home based on Wells Fargo's refusal to pay him for $600 for life as provided in the loan documents. *Id.* at ¶ 51. In reliance on Wells Fargo's misrepresentations and believing he had no other options, Mr. Bartold told Wells Fargo in May 2011 that it could reduce his payments to $500 per month, as Wells Fargo proposed, so as to modestly extend the number of years in which he would receive payments. *Id.* Thereafter, Mr. Bartold signed a "Change of Payment Plan" form prepared by Wells Fargo that misleadingly and inaccurately stated that Mr. Bartold was electing to change his payment plan from "modified term" to "modified term." *Id.* at ¶ 52.

Wells Fargo inaccurately calculated the amount Mr. Bartold was entitled to receive under the "modified term" plan effective June 2011. *Id.* at ¶¶ 69-70. A change to a "modified term" plan should have increased Mr. Bartold's monthly payments above the $600 he was entitled to

receive under a "modified tenure" plan, not decreased it by $100.[1]  *Id.* at ¶¶ 69-70.  It has thus

paid Mr. Bartold less than he is owed each month since June 2011.  *Id.* at ¶¶ 54, 69-70

Mr. Bartold continued to notify Wells Fargo that it had made an error and request that it

allow him to receive monthly payments of $600 per month under a "modified tenure" plan,

without success.  *Id.* at ¶¶ 55-57.  Wells Fargo continued to insist that the loan documents were

for a "modified term" plan.[2]  *Id.*

In approximately December 2013, a Wells Fargo employee finally acknowledged that

Wells Fargo had made a mistake, but Wells Fargo refused to take any action to correct its error.

*Id.* at ¶¶ 59-65.  In December 2013, Wells Fargo mailed Mr. Bartold a copy of his loan

documents, which clearly stated that Mr. Bartold was to receive monthly payments of $600

pursuant to a "modified tenure" plan.  *Id.* at ¶ 59.  Mr. Bartold again contacted Wells Fargo, and

its employee finally acknowledged that the loan documents provided for a "modified tenure"

plan, not a "modified term" one.  *Id.* at ¶¶ 60-62.  Mr. Bartold requested that Wells Fargo make

payments to him of $600 per month under a "modified tenure" plan, as provided in the loan

---

[1] This is because a "tenure plan" involves much more risk for the lender than a "term plan" where payments are capped at a limited term of years.  Payments under both a term schedule and a tenure schedule immediately cease upon the borrower's death.  Under a "tenure plan," the lender must keep paying the borrower until he dies (or certain other events occur), and there is a risk that the borrower will live for many years, requiring more payments than predicted.  By comparison, a monthly payment based on a "term" schedule involves less risk since the payments will cease after a definite term regardless of whether the borrower is still alive.  As a result, the monthly "term" payment will be larger than the monthly "tenure" payment for a reverse mortgage.  Wells Fargo likely arrived at the $500 figure based on its errant belief that the loan documents provide for a "modified term" plan with a term less than 192 months.  Wells Fargo further misstates Mr. Bartold's allegations concerning its miscalculation of his payment on pg. 7 of its Memorandum.

[2] Wells Fargo's Memorandum misstates these allegations on pg. 7.  Mr. Bartold did not inform Wells Fargo "that he believed that he was on a 'modified tenure' plan."  Rather, he informed Wells Fargo it had made an error and requested that he be allowed to choose a "modified tenure" plan with properly calculated payments.  Mr. Bartold further alleges that Wells Fargo employees continued to insist that the *original* payment plan was for "modified term," not that his current payment plan was for "modified term."

documents. *Id.* at ¶ 63.  Wells Fargo failed to follow-up on his request. *Id.* at ¶ 64.  Wells Fargo subsequently told Mr. Bartold that it did not matter that his loan documents indicated a "modified tenure" plan and that Wells Fargo would only pay him $430 per month, not $600, if he changed his payment plan to "modified tenure." *Id.* at ¶ 65.

Wells Fargo stands to benefit from its wrongful conduct because the improper reduction in Mr. Bartold's payments (1) will result in an overall lower loan advance, and fewer out-of-pocket expenses for Wells Fargo, and (2) enable Wells Fargo to collect equally sized servicing and other fees from Mr. Bartold. *Id.* at ¶¶ 58, 71.  As a result of Wells Fargo's actions, Mr. Bartold has suffered financial loss, including the loss of $100 per month from June 2011 through the present. *Id.* at ¶ 72.  Mr. Bartold fears for his financial security and his continued ability to live in his home if Wells Fargo ceases making monthly payments or does not increase his payments back to their proper level. *Id.* at ¶ 67-68.

## ARGUMENT

## I.     Legal Standard for Deciding a Motion to Dismiss

In deciding a motion to dismiss, the plaintiff's allegations must be taken as true and construed in the light most favorable to the plaintiffs. *See Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008).  "The district court may dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) only if the plaintiff's factual allegations are not sufficient 'to state a claim for relief that is plausible on its face.'" *189 Conn. Ave., LLC v. Melville Corp.*, 2009 WL 1537883 at *2 (quoting *Bell Atlantic v. Twombly,* 550 U.S. 544, 570 (2007).  "Specific facts are not necessary" as long as plaintiffs "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Indiaweekly.com, LLC v. Nehaflix.com, Inc.*, 596 F.Supp.2d 497, 501 (D. Conn. 2009) (citing *Erickson v. Pardus,* 551 U.S. 89, 93 (2007).

"The law is clear that factual allegations must be enough only to raise a right to relief above the speculative level on the assumption that all of complainant's allegations are true." *189 Conn. Ave,* 2009 WL 1537883 at *2 (citing *Twombly*); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

## II.    Mr. Bartold's CUTPA and Negligent Misrepresentation Claims Are Not Time-Barred.

Wells Fargo asserts that Mr. Bartold's claims for CUTPA violations and negligent misrepresentation are both time-barred because Wells Fargo first misrepresented that his payment plan was "modified term" in November 2009, so his claims expired in November 2012. Mr. Bartold alleges multiple violations of CUTPA and negligent misrepresentations by Wells Fargo, many of which clearly fall within the limitations period. Because Mr. Bartold also alleges a continuing course of conduct by Wells Fargo, the statute of limitations for earlier CUTPA violations and negligent misrepresentations are tolled, and his claims are timely brought.

## A.    Mr. Bartold Alleges Multiple CUTPA Violations Within the Statute of Limitations Period

CUTPA provides a private right of action for persons who suffer ascertainable loss as a result of unfair or deceptive practices in the conduct of any trade or commerce. Conn. Gen. Stat. § 42-110g(a). A CUTPA action "may not be brought more than three years after the occurrence of a violation." Conn. Gen. Stat. § 42-110g(f). However, "CUTPA's statute of limitations may be tolled where the defendant's course of conduct is continuing." *In re Kellogg*, 166 B.R. 504, 507-08 (Bankr. D. Conn. 1994) (citing *Fichera v. Mine Hill Corp.,* 207 Conn. 204, 209, 212, 541 A.2d 472 (1988)).

Mr. Bartold's complaint alleges that Wells Fargo engaged in numerous unfair or deceptive practices in violation of CUTPA in the three years prior to May 14, 2014, the date

Wells Fargo was served with his complaint.  These practices all clearly fall within the statute of limitations period pursuant to Conn. Gen. Stat. § 42-110g(f).

Mr. Bartold alleges that Wells Fargo violated CUTPA by miscalculating his monthly payment plan under a "modified term" plan so as to improperly reduce his payments, effective June 2011 and continuing to the present.  Had Wells Fargo correctly calculated Mr. Bartold's change of payment plan from "modified tenure" to "modified term," this would have increased his monthly payment above $600, not decreased it to $500.  Wells Fargo took this action based on a deceptive and clearly erroneous payment plan change form it drafted that (1) misrepresents Mr. Bartold's original payment plan was "modified term," when in fact it was "modified tenure" and (2) misstates the amount of the monthly payment Mr. Bartold is entitled to receive under a "modified term" plan for 192 months.

Wells Fargo further violated CUTPA thereafter (1) by paying Mr. Bartold less than he is entitled under the loan documents each month from June 2011 to the present; (2) failing to timely or appropriately investigate and correct its error; (3) refusing to properly calculate Mr. Bartold's payments upon his request; and (4) refusing to allow him to elect to receive his payments under a properly calculated, "modified tenure" schedule, as is his right under the loan documents and HUD regulations.

Wells Fargo again violated CUTPA in approximately December 2013 when it finally acknowledged its glaring error regarding the original loan documents yet refused to take any steps to correct it.  Wells Fargo's admission that the loan documents specified payments of $600 per month on a "modified tenure" payment plan meant that Wells Fargo's calculation of Mr. Bartold's monthly payment pursuant to a "modified term" plan beginning June 2011 was incorrect and Wells Fargo was depriving Mr. Bartold of loan proceeds he was entitled to.

10

Nevertheless, Wells Fargo would not correct Mr. Bartold's account, investigate the matter further, or allow Mr. Bartold to receive properly calculated payments under a "modified tenure" plan.

Each of these violations occurred on or after May 14, 2011, so they are clearly within the statute of limitations for CUTPA and should not be dismissed as time-barred.

**B.     Mr. Bartold Has Sufficiently Pled That the Continuing Course of Conduct Doctrine Tolls the Statute of Limitations for CUTPA Violations Prior to May 14, 2011.**

The statute of limitations for CUTPA is tolled when the defendant has engaged in a continuing course of conduct: "[w]hen the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed." *Vanliner Ins. Co. v. Fay*, 98 Conn. App. 125, 140, 907 A.2d 1220, 1230 (2006); *see also Fichera v. Mine Hill Corp.,* supra, 207 Conn. 204, 209, 212, 541 A.2d 472 (1988); *Doe v. British Universities N. Am. Club,* 788 F.Supp. 1286, 1296–1297 (D.Conn.1992) (recognizing course of conduct doctrine in context of CUTPA actions).

The continuing course of conduct doctrine "reflects the policy that, during an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedied.... [I]t is appropriate to allow the course of action to terminate before allowing the repose section of the statute of limitations to run." *Rosenfield v. Rogin, Nassau, Caplan, Lassman & Hirtle, LLC*, 69 Conn. App. 151, 160-61, 795 A.2d 572, 579 (2002) (quoting *Giulietti v. Giulietti*, 65 Conn.App. 813, 832-36, 784 A.2d 905, cert. denied, 258 Conn. at 946, 947, 788 A.2d 95 (2001)).  The doctrine further prevents plaintiffs from having "to bring separate suits during the limitations period after each incident giving rise to the claim … [which would] impose an unreasonable burden on the courts to entertain an indefinite number of suits and apportion damages among them." *Watts v. Chittenden*, 301 Conn. 575, 587-

88, 22 A.3d 1214, 1222 (2011) (quoting *Heard v. Sheahan*, 253 F.3d 316, 319–20 (7th Cir.2001)).

To determine whether the continuing course of conduct doctrine applies, "the defendant must [first] have committed an initial wrong upon the plaintiff." *Flannery v. Singer Asset Fin. Co.*, LLC, 312 Conn. 286 (2014). "A second requirement … is that there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto.... This court has held this requirement to be satisfied when there was wrongful conduct of a defendant related to the prior act." *Id.* at *10 (citing *Watts v. Chittenden*, supra, 301 Conn. at 583-85). Such later "wrongful conduct may include acts of omission as well as affirmative acts of misconduct...." *Id.* (citing *Blanchette v. Barrett*, 229 Conn. 256, 264, 640 A.2d 74 (1994)). It may also arise out of a "special relationship between the parties giving rise to … a continuing duty." *Giulietti v. Giulietti*, supra, 65 Conn.App. at 833–35. "The issue … of whether a party engaged in a continuing course of conduct that tolled the running of the statute of limitations is a mixed question of law and fact." *Vanliner Ins. Co. v. Fay*, supra, 98 Conn. App. at 139.

Numerous courts have found the continuing course of conduct doctrine applicable to CUTPA actions (1) when a plaintiff alleges that a subsequent wrongful act occurred within the statute of limitations period or (2) the defendant's relatively continuous wrongful practice extends into the statute of limitations period. *See, e.g., Izzarelli v. R.J. Reynolds Tobacco Co.*, 117 F. Supp. 2d 167, 177 (D. Conn. 2000) (tobacco company's marketing strategies directed to minors for more than 40 years a continuing course of conduct); *Marcus Dairy, Inc. v. Rollin Dairy Corp.*, 2008 WL 4425954 (D. Conn. Sept. 24, 2008) (continuous practice of discriminatory pricing and anti-competitive conduct in violation of contract continuing course of

conduct); *Dime Loan Servicing Corp. v. Walter*, 2013 WL 1800927 (Conn. Super. Ct. Apr. 5, 2013) (five deceptive loan transactions with defendant continuing course of conduct that terminated with filing of foreclosure action); *Gianetti v. Greater Bridgeport Individual Practice Ass'n*, 2005 WL 2078546 (Conn. Super. Ct. July 21, 2005) (continuation of wrongful acts into the statute of limitations period, including using wrongful billing practice and filing of one of numerous lawsuits, continuing course of conduct).[3]  In contrast, if the time gap between wrongful acts is greater than the three-year statute of limitations period, the continuing course of conduct doctrine will not toll a CUTPA claim.  *Flannery v. Singer Asset Fin. Co., LLC*, supra, 312 Conn. at *11-12.

Based on the factors identified in *Flannery v. Singer Asset Fin. Co, LLC*, Mr. Bartold has sufficiently pled that the statute of limitations is tolled under CUTPA for Wells Fargo's wrongful acts dating back to the origination of the loan pursuant to the continuing course of conduct doctrine.  First, Wells Fargo committed an initial wrong against Mr. Bartold when it treated his payment schedule as "modified term" rather than "modified tenure" in its servicing of the loan immediately following origination in October 2009 and misrepresented to Mr. Bartold that his payment plan under the loan documents was "modified term" beginning with the first loan statement it sent him in November 2009.  Second, Wells Fargo breached a continuing duty owed to Mr. Bartold by both (1) persisting in its initial wrongful practice in a continuous fashion well into the statute of limitations period and (2) engaging in subsequent wrongful acts related to its

---

[3] *See also Daum v. Rare Coin Investments Portfolios*, *Inc.*, 1995 WL 512639 (Conn. Super. Ct. Aug. 22, 1995) (allegation of wrongful acts within the statute of limitations period and special relationship with seller of rare coins continuing course of conduct); *Manufacturers Hanover Trust Co. v. Stamford Hotel Ltd. P'ship*, 1994 WL 720368 (Conn. Super. Ct. Dec. 15, 1994) (special relationship between borrower and lender supported continuing course of conduct); *Assurance Co. of Am. v. Yakemore*, 50 Conn. Supp. 28, 34, 911 A.2d 777, 783 (Super. Ct. 2005) (defendant's continuing duty to comply with building codes as the builder, property owner, and landlord of a property supported continuing course of conduct).

prior wrongful act.[4]  Until approximately December 2013, Wells Fargo repeatedly and consistently misrepresented to Mr. Bartold that his loan documents specified a "modified term" plan.  In its servicing of the loan, Wells Fargo continues through the present to treat the initial payment plan as "modified term" and has based its errant calculation of Mr. Bartold's current payment amount on this assumption.  Wells Fargo further engaged in numerous subsequent wrongful acts or omissions, including improperly reducing Mr. Bartold's monthly payments, refusing to timely investigate its error, and failing to correct Mr. Bartold's account upon its admission of error.  Mr. Bartold specifically pleads in his CUTPA count that Wells Fargo has engaged in a "continuous course of unfair and/or deceptive acts or practices."  Compl., Count I, ¶78.

These factual allegations are more than sufficient to plead a continuing course of conduct so as to establish Mr. Bartold's right to relief for Wells Fargo's unfair or deceptive practices dating back to the origination of the reverse mortgage.  There is no significant time-gap between Wells Fargo's wrongful acts, and Wells Fargo's actions are far more continuous and interconnected than the tortfeasors' actions in *Dime Loan Servicing Corp.* or *Gianetti*, where courts found a continuing course of conduct.  Moreover, Mr. Bartold's case raises the policy concerns underlying the doctrine; he has an "ongoing relationship" with Wells Fargo, and, up until Wells Fargo admitted its error but refused to correct it in December 2013, it was plausible that Wells Fargo would cease its wrongful conduct without litigation.  *See Rosenfield v. Rogin, Nassau, Caplan, Lassman & Hirtle, LLC*, supra, 69 Conn. App. at 160-61; *Watts v. Chittenden*,

---

[4] Wells Fargo further owed a continuing duty to Mr. Bartold to properly calculate and distribute loan proceeds in accordance with the loan documents and HUD regulations.  Wells Fargo has continuously breached this duty up through the present.  This is an alternative basis on which to find a continuing course of conduct.

supra, 301 Conn. at 587-88.  As such, Wells Fargo's request that the court dismiss Mr. Bartold's CUTPA claims as time-barred should be denied.

**C.**      **Mr. Bartold's Negligent Misrepresentation Claim Is Not Time-Barred**

The statute of repose for tort claims, including negligent misrepresentation, states that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."  Conn. Gen. Stat. §52-577.  Mr. Bartold alleges numerous negligent misrepresentations by Wells Fargo dating as recently as approximately December 2013.  His negligent misrepresentation claim is thus timely.

Alternatively, as with CUTPA claims, the statute of limitations for negligent misrepresentation may be tolled when a defendant has engaged in a "continuing course of conduct."  *See Sin Hang Lee v. Brenner, Saltzman, & Wallman, LLP*, 128 Conn. App. 250, 256, 15 A.3d 1215, 1219 (2011).  Connecticut uses the same test for the tolling of negligent misrepresentation claims as it does for CUTPA claims.  *See, e.g.*, *Larobina v. First Union Nat. Bank,* 2006 WL 437396 (Conn. Super. Ct. Feb. 1, 2006) (continuing course of conduct doctrine tolled statute of limitations for negligent misrepresentation based on bank's monthly billing statements misrepresenting loan terms).

Mr. Bartold alleges sufficient facts to plead a continuing course of conduct so as toll his negligent misrepresentation claim, for the same reasons his claim for CUTPA violations should be tolled.  Wells Fargo first made a negligent misrepresentation to Mr. Bartold in November 2009 when it sent him a loan statement indicating that the loan documents provided for a "modified term" payment plan.  Thereafter, Wells Fargo continued to negligently misrepresent to Mr. Bartold until approximately December 2013 that the loan documents provided for a "modified term" payment plan.  Each loan statement Wells Fargo has sent Mr. Bartold from

November 2009 to the present has either (1) negligently misrepresented Mr. Bartold's current payment plan or (2) negligently misrepresented the terms of the loan, including the amount Mr. Bartold is entitled to under his current payment plan.  Wells Fargo further negligently misrepresented to Mr. Bartold on numerous occasions, and as recently as approximately December 2013, that he cannot receive monthly payments of $600 pursuant to a modified tenure payment schedule.  Mr. Bartold's complaint thus sufficiently alleges a continuous course of conduct by Wells Fargo so as to toll the statute of limitations for negligent misrepresentation, and his claim should not be dismissed.

### III.    Mr. Bartold Has Sufficiently Pled a CUTPA Claim Against Wells Fargo.

To determine whether a practice is unfair in violation of CUTPA, a court uses the "cigarette rule" to examine whether the practice (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers.  *Harris v. Bradley Memorial Hospital & Health Center, Inc.*, 296 Conn. 315, 350 (2010).  "All three criteria do not need to be satisfied to support a finding of unfairness."  *Glazer v. Dress Barn, Inc.*, 274 Conn. 33, 82 (2005).  The Connecticut Supreme Court has held that the banking industry is subject to CUTPA.  *Normand Jose Enterprises, Inc. v. Connecticut National Bank*, 230 Conn. 486 (1994).

"The same facts that establish a breach of contract claim may be sufficient to establish a CUTPA violation."  *Lester v. Resort Camplands Int'l, Inc.*, 27 Conn. App. 59, 71, 605 A.2d 550, 557 (1992).  "Some of the oldest 'unfairness' decisions involve sellers' refusals to live up to the terms of their contract. The Commission has often challenged sellers for traditional breaches of contract.... Breach of contract has long been condemned as a matter of law, economics, and public policy."  *Id.* at 72, (quoting *Orkin Exterminating Co. v. Federal Trade Commission*, 849

F.2d 1354, 1367 (11th Cir. 1988), cert. denied, 488 U.S. 1041, 109 S.Ct. 865, 102 L.Ed.2d 989

(1989)).

A mortgage servicers' breach of its contract with a consumer has been found to

sufficiently allege an unfair practice.  *See Countrywide Home Loans, Inc. v. Needham,* 2007 WL

4211261 (Conn. Super. Ct. Nov. 7, 2007) (failure to send right to cure default prior to filing

foreclosure).  An allegation of multiple breaches of contract may violate the third prong of the

cigarette rule, as this causes substantial injury to consumers.  *See Greene v. Orsini,* 50 Conn.

Supp. 312, 315-16, 926 A.2d 708, 710-11 (Super. Ct. 2007); *Ameripride Servs., Inc. v. U.S. Food

Serv., Inc.,* 2006 WL 1738338 (Conn. Super. Ct. June 7, 2006); *Rosenfield v. Klein*, 2008 WL

4635970 (Conn. Super. Ct. Sept. 30, 2008).  A negligent misrepresentation by the defendant may

also be "immoral, unethical, oppressive, or unscrupulous," so as to satisfy the second prong, or it

may be construed as a deceptive act.  *Gray v. Sullivan Real Estate Inc.*, 2010 WL 2573820

(Conn. Super. Ct. May 18, 2010).

Wells Fargo's actions are unfair practices under all three prongs of the cigarette rule,

even though a finding of unfairness under just one will support a CUTPA claim.  *See Glazer v.

Dress Barn, Inc.*, supra, 274 Conn. at 82.  First, Wells Fargo's actions offend public policy,

including that embodied in 12 U.S.C. § 1715z–20, the statute authorizing the HECM reverse

mortgage insurance program, which states that the program is intended to increase the financial

security of elderly homeowners.  Its actions further offend the public policy contained in HUD

regulations under the program, which provide that "[t]he paramount servicing responsibility is

the need to make timely payments in full as required by the mortgage."  24 C.F.R. § 206.201.

Second, Wells Fargo's actions are "immoral, unethical, oppressive, or unscrupulous."  It made

repeated misrepresentations to Mr. Bartold, threatened to improperly terminate his monthly

payments, and refused to correct his payments—its "paramount servicing responsibility"—even after it finally acknowledged it had made an error in approximately December 2013. Mr. Bartold has no choice over his mortgage servicer, and Wells Fargo's actions show it has abused its position of power over him. Third, Wells Fargo's actions cause substantial injury to consumers, and its action are not justified by any countervailing benefit. Mr. Bartold is elderly, has disabilities, and relies on a fixed income. Wells Fargo has continuously and repeatedly breached its contract with Mr. Bartold since the loan was originated. Since 2011, it has deprived him of a significant portion of his monthly income and the financial security he believed he had with a "modified tenure" plan, resulting in substantial injury. Mr. Bartold has thus sufficiently alleged that Wells Fargo's actions are unfair so as to plead a CUTPA claim.

## IV.   Mr. Bartold Alleges Multiple Breaches of Contract.

In his complaint, Mr. Bartold alleges that Wells Fargo "breached its contract with Mr. Bartold, including by unilaterally changing his payment schedule from 'modified tenure' to 'modified term,' failing to make contractual payments as agreed to in the loan documents, and refusing to allow Mr. Bartold to receive his payments of $600 per month on a 'modified tenure' payment schedule." Compl., Count II, ¶76. Wells Fargo makes the dubious assertion in its Memorandum that Mr. Bartold has not alleged any breach of the loan documents and thus has not pled a breach of contract claim.

In actuality, Mr. Bartold alleges *multiple* breaches by Wells Fargo, including: (1) Wells Fargo's unilateral change of his payment schedule from "modified tenure" to "modified term" without following contractual procedures beginning in November 2009 so as to deprive Mr. Bartold of the agreed upon monthly payments for life, a breach of sections 2.5, 2.7, 2.8, and Exhibit A of the Loan Agreement and pg. 1 of the Mortgage; (2) Wells Fargo's failure to make

payments as agreed in the loan documents, including paying him less each month from June 2011 to the present than he should have received were his payments properly calculated based on a change of payment plan from "modified tenure" to "modified term," a breach of sections 2.5 and 2.7 of the Loan Agreement; (3) refusing numerous times, as recently as approximately December 2013, to allow Mr. Bartold to receive properly calculated monthly payments on a "modified tenure" payment schedule upon his request, a breach of sections 2.5, 2.7, and 2.8 of the Loan Agreement; and (4) purporting to change Mr. Bartold's payment plan from "modified term" to "modified term" effective June 2011, a breach of sections 2.8 of the Loan Agreement. Any of these alleged breaches are sufficient to support a cause of action against Wells Fargo for breach of contract.

Wells Fargo's argument appears to rely on the selective omission of Mr. Bartold's factual allegations and a strained interpretation of the Change of Payment Plan that went into effect June 2011, Exhibit A to its Memorandum.[5]  Wells Fargo drafted the Change of Payment Plan, and it is riddled with errors and misrepresentations.  It purports to change Mr. Bartold's payment plan from "modified term" to "modified term," even though at that time his payment plan was "modified tenure."  It is thus of uncertain legal effect.  It further miscalculates the amount he should receive under a "modified term" plan so as to deprive him of loan proceeds he is entitled to under the loan documents.  As Mr. Bartold alleges in his complaint, he only signed this document as a result of Wells Fargo's threats to terminate his monthly payments entirely and its persistent misrepresentations regarding his payment plan.

---

[5] The Change of Payment Plan need not be considered in determining whether Mr. Bartold has stated a cause of action for breach of contract because it is not integral to his complaint and there are disputed issues regarding its relevance and whether it was voluntarily signed.  *See Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).  However, the document does not defeat his breach of contract claim and in fact provides material evidence of Wells Fargo's breach of contract, violation of CUTPA, and negligent misrepresentations.

Regardless, the Change of Payment Plan does not disturb Mr. Bartold's claim against Wells Fargo's for its breach of the loan documents—the loan agreement, note, and mortgage it signed with him.  The loan documents allow the borrower to request a change of payment plan at any time and require the lender to (1) properly calculate the new payment amount and (2) provide documentation to the borrower of the new payment amount in a Change of Payment Plan form.  *See* Loan Agreement, Sec. 2.8.  The Change of Payment Plan merely documents the lender's recalculation under the loan agreement of the new payment schedule based on the borrower's request for a different payment plan.  It complements the original loan documents, and does not replace, supersede, modify or fundamentally alter them so as to absolve Wells Fargo of liability for its prior breaches or its ongoing contractual obligation to properly calculate Mr. Bartold's payments under whichever payment plan he chooses.

Wells Fargo's implication—that Mr. Bartold somehow waived all of his contractual rights because of Wells Fargo's numerous errors in the Change of Payment Plan—is both unsupported by the loan documents and an affront to HUD's clear guidance to reverse mortgage servicers.  HUD prohibits restrictions on a borrower's "Freedom of Choice" to select or change their payment plan and forbids servicers "from seeking any agreement from the mortgagor that is inconsistent with the ability of the mortgagor to exercise his or her rights to the fullest extent permitted by law."[6]  Were Wells Fargo to persist in this line of argument, it might expose it to sanctions from HUD and imperil its future ability to make a mortgage insurance claim associated with Mr. Bartold's loan.

---

[6] See HUD Mortgagee Letter 2014-10, pg. 3 (prohibiting restrictions on borrower's freedom of choice) and pg. 4 (describing possible sanctions).  See also 24 C.F.R. § 206.201 (providing for sanctions).

Even if Wells Fargo's argument is accepted on its face, Mr. Bartold has still alleged a breach of contract.  Wells Fargo unilaterally changed Mr. Bartold's payment plan from "modified tenure" to "modified term" beginning in November 2009, in breach of sections 2.5, 2.7, and 2.8 of the Loan Agreement and pg. 1 of the Mortgage.  It did so without Mr. Bartold's consent, without providing or obtaining a signed Change of Payment Plan Form, and without properly calculating the new payment amount, all further breaches.  Since the Change of Payment Plan went into effect, Mr. Bartold has repeatedly requested that Wells Fargo change his payment plan back to "modified tenure" and properly calculate his payment amount.  Wells Fargo has refused to do so, in breach of sections 2.5, 2.7, and 2.8 of the Loan Agreement.  Mr. Bartold thus sufficiently alleges a breach of contract claim.

## V.     HUD Is Merely the Mortgage Insurer and Is Not a Necessary Party to this Action Under Rule 19(a).

Rule 19(a) requires the joinder of a party if "(A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."  "If any of the criteria established by Rule 19(a) are met, the district court must then … order that the absent party be joined as a party." *Edible Arrangements Int'l, Inc. v. JHRV Enterprises, Inc.*, 2010 WL 3952017 at *4 (D. Conn. Oct. 1, 2010).  Wells Fargo bears the burden of establishing that joinder of the Secretary of the Department of Housing and Urban Development ("HUD") as a necessary party is required.  *See Joseph S. v. Hogan*, 561 F. Supp. 2d 280, 311 (E.D.N.Y. 2008).  It has not met its burden.

A Home Equity Conversion Mortgage is a reverse mortgage loan for elderly homeowners insured by the Federal Housing Administration of HUD.  HUD does not provide reverse mortgages directly; rather, it insures lenders extending qualifying reverse mortgages to elderly borrowers in order to insulate lenders from risk and make lending to these homeowners more attractive.  *See* 12 U.S.C. § 1715z–20; 24 C.F.R. § 206; *see also Santos v. Reverse Mortgage Solutions, Inc.*, 2013 WL 5568384 at *1 (N.D. Cal. Oct. 9, 2013) (describing HECM mortgage insurance program).[7]  The lender pays a monthly mortgage insurance premium to HUD, which is assessed to the borrower's loan account.  In the event that the lender is not able to recover the entire balance of the loan once it becomes due, the lender may make a claim to HUD for payment from the mortgage insurance fund.  HUD will evaluate whether to pay the mortgage insurance claim based on its own regulations and procedures.[8]  *See, e.g.,* 24 C.F.R. § 206.129.

Wells Fargo appears to fundamentally misunderstand the role of HUD within HECM reverse mortgage loan transactions and the relief Mr. Bartold is seeking, and its reasoning in arguing that HUD is a necessary party is not clearly explained.  Wells Fargo, alone, is Mr. Bartold's lender.  HUD's entire interest in Mr. Bartold's reverse mortgage loan transaction is as Wells Fargo's mortgage insurer.[9]  Mr. Bartold does not even have a conceivable cause of action

---

[7] The statute authorizing the program is titled "Insurance of home equity conversion mortgages for elderly homeowners" and it describes a "program of mortgage insurance," not direct lending by HUD.  12 U.S.C. § 1715z–20.

[8] In limited circumstances, HUD may make payments directly to a borrower when the lender has defaulted on its payment obligations, and the lender may also assign the loan to HUD.  In order to protect HUD's interests, the borrower executes a "Second Note" and "Second Mortgage" with HUD at origination in the unlikely event HUD makes payments directly to the borrower.  *See Durrell v. Fannie Mae*, 2013 WL 359937 at *2 (E.D. Mich. Jan. 29, 2013) (explaining purpose of second note and mortgage).

[9] Wells Fargo's reliance on the language in the Mortgage describing its relationship to the Second Mortgage with HUD is misplaced.  HUD has not paid any amounts directly to Mr.

against HUD.  Wells Fargo has not assigned Mr. Bartold's loan to HUD, nor has HUD made any payments directly to Mr. Bartold.  Because Mr. Bartold's loan is not due, Wells Fargo presumably has not made a claim to the HECM mortgage insurance fund.  If Wells Fargo were ever to make a mortgage insurance claim for Mr. Bartold's loan, HUD would be free to evaluate whether to pay it based on the insurance program's regulations and procedures; HUD's hypothetical interests are thus adequately protected.  Moreover, Mr. Bartold is not, as Wells Fargo claims, "seeking to modify" his reverse mortgage loan—he is merely seeking to enforce the terms of the original loan documents, a transaction that HUD already agreed to insure on the terms Wells Fargo violated.  Complete relief is thus available among the existing parties.  It is unclear how this litigation could possibly prejudice HUD's rights so as to necessitate joinder under Rule 19(a).

Plaintiff's counsel is unaware of any cases between lenders of HECM reverse mortgage loans and borrowers (or their heirs) in which HUD was joined as a necessary party under Rule 19(a).  In fact, HUD is only a party in reverse mortgage cases (1) where the lender had assigned HUD the loan, so HUD had assumed its obligations, *see, e.g., United States v. Jacono,* 2006 WL 560142 (E.D. Pa. Mar. 3, 2006) aff'd, 244 F. App'x 416 (3d Cir. 2007) or (2) the plaintiffs were challenging HUD's promulgation of regulations contrary to the statute authorizing the HECM insurance program.[10]  *See, e.g. Bennett v. Donovan*, 703 F.3d 582 (D.C. Cir. 2013).  In *Bennett,*

---

Bartold, and there has not been any assignment or reimbursement to HUD.  HUD has acted solely as a mortgage insurer, and is not somehow a co-lender with Wells Fargo by virtue of the Second Mortgage.

[10] A district court did dismiss a pro se complaint against HUD for "civil rights violations," but even in this case, the breach of contract claim was addressed solely at the mortgage lender, not at HUD.  *Lollis v. HUD*, 2012 WL 1252568 (N.D. Tex. Mar. 14, 2012) report and recommendation adopted, 2012 WL 1267852 (N.D. Tex. Apr. 13, 2012).

the D.C. Circuit Court struggled to find that HUD could even redress the injury suffered by surviving spouses of reverse mortgage borrowers threatened with foreclosure so as to confer standing, although the court ultimately found that HUD had the tools to provide relief, if it so chose. *Id.* at 586-90. Neither of these examples is implicated here. In contrast, district courts have considered numerous cases related to HECM reverse mortgage loans without the presence of HUD as a party, some of which involve actions for reformation of the original loan documents, far more than what Mr. Bartold is seeking.[11]

The court may afford Mr. Bartold the relief he seeks—damages and enforcement of his contract with Wells Fargo—in the absence of HUD, and Wells Fargo has not established that this litigation will in any way prejudice HUD's interests. Therefore, Wells Fargo's request that the court order joinder of the Secretary of HUD pursuant to Rule 19(a) should be denied.

## CONCLUSION

For the foregoing reasons, the plaintiff opposes the defendant's motion to dismiss and its motion to order the joinder of the Secretary of Department of Housing and Development under Rule 19(a).

---

[11] *See, e.g. Kennedy v. World Alliance Fin. Corp.,* 792 F. Supp. 2d 1103, 1104 (E.D. Cal. 2011) (action for rescission); *Kerrigan v. Bank of Am.,* 2011 WL 3565121 (C.D. Cal. Aug. 12, 2011) (borrower's spouse seeking reformation of mortgage loan documents); *Santos v. Reverse Mortgage Solutions, Inc.,* 2012 WL 4891597 (N.D. Cal. Oct. 12, 2012) (granting preliminary injunction to stop foreclosure); *Wiseman v. First Mariner Bank,* 2013 WL 5375248 (D. Md. Sept. 23, 2013) (reformation of mortgage loan documents); *Labrador v. Seattle Mortgage Co.,* 681 F. Supp. 2d 1106 (N.D. Cal. 2010) (fees in excess of HUD regulations); *Labrador v. Seattle Mortgage Co.,* 2010 WL 3768378 (N.D. Cal. Sept. 22, 2010) (granting class certification); *Durrell* v. *Fannie Mae,* 2013 WL 359937 (E.D. Mich. Jan. 29, 2013) (surviving spouse of borrower); *Ray v. Nationstar Mortgage LLC,* 2014 WL 2558695 (S.D. Cal. June 6, 2014) (same); *Morgan v. World Alliance Fin. Corp.,* 2013 WL 373270 (E.D. Pa. Jan. 31, 2013) (same).

Respectfully Submitted,

By Counsel:   /s/ Sarah White

                Sarah White (ct29329)
                Jeffrey Gentes (ct28561)
                Connecticut Fair Housing Center
                221 Main Street, 4th Floor
                Hartford, CT 06106
                Tel.    (860) 263-0726
                Fax    (860) 247-4236
                swhite@ctfairhousing.org

## CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2014 a copy of the foregoing was filed and served electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

                By:_____/s/_____
                      Sarah White