**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| VINCENT BARTOLD, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 14-cv-00865 (VAB) |
| | : | |
| WELLS FARGO BANK, N.A., | : | |
| Defendant. | : | |

### RULING ON MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER

Plaintiff, Vincent Bartold, has sued Defendant, Wells Fargo Bank, N.A. ("Wells Fargo"), alleging violations of the Connecticut Unfair Trade Practices Act ("CUTPA") as well as breach of contract and negligent misrepresentation, all arising out of a reverse mortgage agreement between the two parties. Compl., ECF No. 1-2. This relatively simple lawsuit has been pending since June 2014. Yet, discovery remains incomplete and several discovery disputes remain unresolved.

As the parties have failed to move this case along effectively, this Court has set this case for a June 2017 trial, to the extent that such a trial is necessary. *See* Dec. 2016 Scheduling Order, ECF No. 76. To ensure that this trial date can be met, the Court now resolves the outstanding discovery disputes that have kept the parties from moving forward in any meaningful way for several months. Mr. Bartold seeks to compel the production of numerous documents as well as responses to numerous interrogatories, and Wells Fargo seeks a protective order prohibiting Mr. Bartold from inquiring into various topics during depositions of Wells Fargo's corporate representatives. Pl. Mot. to Compel, ECF No. 69; Def. Mot. for Prot. Order, ECF No. 70.

1

For the reasons outlined below, Mr. Bartold's motion to compel is **GRANTED IN PART AND DENIED IN PART**, and Wells Fargo's motion for a protective order is **GRANTED IN PART AND DENIED IN PART**.

### I. Factual and Procedural Background

In 2009, Mr. Bartold, then 67 years old, reached an agreement with Wells Fargo for a reverse mortgage, which he believed would provide him with a guaranteed income of $600 per month for the rest of his life.[1]  Compl. ¶ 32.  Mr. Bartold signed documents with Wells Fargo providing for a "modified tenure" plan.  *Id.*  A "modified tenure" plan allows for the payment of a fixed amount of money each month for the rest of the mortgagor's life as long as the mortgagor continues to live in the property.  *Id.* at ¶ 7.  To the contrary, a "modified term" plan similarly allows for the payment of a fixed amount of money each month, but is set to expire after a set number of years.  *Id.*  Both types of reverse mortgages include a line of credit that the mortgagor can access on demand.  *Id.*

Wells Fargo, however, misclassified Mr. Bartold's modified tenure plan as a modified term plan, which provided for monthly payments only for a fixed number of years rather than for the rest of Mr. Bartold's life.  *Id.* at ¶ 43.  When Mr. Bartold contacted Wells Fargo to address this error, Wells Fargo, as it now concedes, repeatedly told Mr. Bartold that he was not entitled to the type of mortgage to which he and Wells Fargo had initially agreed.  *Id.* at ¶¶ 41-58.  After multiple communications from Mr. Bartold, Wells Fargo amended several of the terms of his mortgage agreement, including lowering the amount of monthly payments in exchange for a longer term.  *See id.*  During the course of this litigation, Wells Fargo eventually corrected the

---

[1] A reverse mortgage allows a homeowner, typically an elderly homeowner who has lived in his or her home for long enough to pay off the underlying mortgage, to receive monthly payments by converting part of the equity in the home into cash.  *See* Compl. ¶ 16.

error to reflect an agreement whereby Mr. Bartold would receive $600 monthly payments for the remainder of his life as long as he continues living in his home.

Throughout the course of discovery in this matter, the parties have persistently been unable to agree on the scope of Mr. Bartold's discovery requests, interrogatories and deposition topics.  Mr. Bartold contends that Wells Fargo's conduct reflects not only a breach of contract, but also a broader trade practice of unfairly misleading customers in connection with these types of mortgages.  As a result, Mr. Bartold seeks extensive discovery, requesting access to a wide variety of information pertaining to Wells Fargo's business operations surrounding these mortgages.  Wells Fargo, on the other hand, believes that this dispute is limited to an isolated decision made by lower-level Wells Fargo employees, and thus such broad discovery is not warranted.  Wells Fargo has expressed concern about multiple other lawsuits against Wells Fargo that have been brought by Mr. Bartold's counsel, and it believes that the information sought by Mr. Bartold in this matter could be used against it in connection with those other matters.  *See* Def. Mem. in Opp. at 16 (arguing that "Plaintiff's attorneys are really asking for this information so that they can leverage whatever they learn through discovery for future cases").  Accordingly, Wells Fargo has objected to the vast majority of Mr. Bartold's discovery requests.

On December 2, 2016, the Court issued an Order directing the parties to confer and resolve their numerous outstanding discovery disputes.  Order, ECF No. 67.  The Court also indicated that it would be adopting an accelerated trial schedule in this case, given the age of the case and the numerous delays involved.  *Id.* at 2-3.  The Court gave the parties a deadline of December 9, 2016 to file either: (a) a proposed scheduling order ensuring trial by June 2017, or (b) a motion to compel and/or a motion for a protective order outlining any discovery disputes

that remain outstanding. *Id.* In the absence of a proposed scheduling order, the Court determined that it would take control over scheduling in this case and ensure trial by June 2017.

On December 9, 2016, Mr. Bartold and Wells Fargo each filed a separate discovery motion in this matter, outlining a substantial number of unresolved discovery-related disputes. Pl. Mot. to Compel, ECF No. 69; Def. Mot. for Prot. Order, ECF No. 70. Mr. Bartold seeks to compel discovery of the following information:

(a) Responses to several of Plaintiff's First Requests for Production (First RFP Nos. 47-54) regarding nine separate categories of Wells Fargo policies and procedures related to various aspects of reverse mortgages;

(b) Responses to over twenty of Plaintiff's Second Requests for Production (Second RFP Nos. 5-16, 18-21, 13-15, 28-38), requesting documents related to Wells Fargo mortgage loans, communication logs from databases used by Wells Fargo customer service representatives, and documents relied on by Wells Fargo in answering Mr. Bartold's interrogatories; and

(c) Responses to over fifteen of Plaintiff's Interrogatories (Inter. Nos. 1-7, 9-11, 14-24).

Pl. Mot. to Compel. Wells Fargo's Motion for Protective Order does not directly address any of these requests; instead, it objects to all of the proposed deposition topics outlined in Mr. Bartold's Rule 30(b)(6) deposition notice. Def. Mot. for Protective Order.

On December 20, 2016, on the eve of the scheduled oral argument for the parties' discovery motions, Wells Fargo filed a supplemental opposition to Mr. Bartold's Motion to Compel, providing its responses to various of the contested interrogatories and requests for production (Interr. Nos. 1-7, 9-11 and 14-19; Second RFP Nos. 5, 9-15). Def. Supp. Br., ECF No. 74. With respect to the remaining disputed discovery matters (First RFP Nos. 47-54; Second

RFP Nos. 6-8, 16, 18-21, 28-38), Wells Fargo insists that the requested information is either irrelevant, confidential, or excessive in light of the narrow scope of Mr. Bartold's claims. Def. Mem. in Opp., ECF No. 73.

This impasse has significantly delayed the prompt and efficient resolution of this dispute. Although many of the parties' disagreements date back to as early as April of 2016, none of these disputes were brought to the Court's attention until November of 2016. In fact, Wells Fargo did not provide a written explanation of the issues involved with the initial processing of Mr. Bartold's reverse mortgage until December 20, 2016, only two days before the scheduled oral argument on the parties' discovery motions. See Def. Supp. Br., ECF No. 74. Consistent with the Court's "inherent powers… to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases," *Dietz v. Bouldin*, 136 S.Ct. 1885, 1892 (2016), the Court has entered a scheduling order to ensure that this matter will be tried before a jury by no later than the end of June 2017. Scheduling Order, ECF No. 76.

The Court's revised scheduling order provides for the following deadlines: dispositive motions are due by March 3, 2017; the parties' Joint Trial Memorandum is due by May 26, 2017; Jury Selection is set for June 12, 2017; the Final Pre-Trial Conference is set for June 23, 2017 at 2:00 PM; and Jury Trial is set to begin on the morning of June 26, 2017. *Id.* The Court's order states that these deadlines will not be extended further. *Id.*

## II. Discussion

Under Fed. R. Civ. P. 26(b)(1), the parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case" and this Court has broad discretion in deciding a motion to compel discovery. *Grand Cent. P'ship. Inc. v. Cuomo,* 166 F.3d 473, 488 (2d Cir. 1999). Furthermore, the "party

resisting discovery bears the burden of showing why discovery should be denied." *Cole v. Towers Perrin Forster & Crosby*, 256 F.R.D. 79, 80 (D. Conn. 2009).

This case arises out of alleged errors made by Wells Fargo in connection with a reverse mortgage issued to Mr. Bartold. Accordingly, the information sought by Mr. Bartold pertaining directly to his reverse mortgage is relevant and discoverable, and Wells Fargo's stated objections do not establish that discovery of this information should be denied.

### A. Motion to Compel

Mr. Bartold seeks discovery of a variety of Wells Fargo policies and procedures, copies of database entries from multiple departments within the Wells Fargo organization, and communications in various forms pertaining to Mr. Bartold's loan. Wells Fargo has responded with broad objections, claiming that the discovery requests are too expansive, burdensome, confidential and irrelevant. Mr. Bartold's [69] Motion to Compel is granted in part and denied in part.

### 1. Policies and Procedures (First RFP Nos. 47-54)

Mr. Bartold originally asked Wells Fargo to produce complete copies of a series of policies and procedures in effect from October 2009 to the present. First RFPs, White Aff. Ex. C at 8-9, ECF No. 69-5. This list was later narrowed to include only nine categories of Wells Fargo Policies from a slightly more limited time period. *See* Pl. Mem. in Supp. at 9. At oral argument, counsel for Mr. Bartold further clarified that they were mostly seeking access to policies governing the resolution of customer disputes.

Wells Fargo argues that none of the policies are relevant to Mr. Bartold's claims. Def. Mem. in Opp. at 23. However, Wells Fargo has admitted that its own employees erred at some point during the loan onboarding process, resulting in the alleged actions that gave rise to this

6

lawsuit.  *See* Second Objections and Responses at 5, ECF No. 74-1 (explaining that "the Loan Submission Schedule for Mr. Bartold's loan incorrectly reflects a modified term payment plan" and further clarifying that, because "a Wells Fargo employee used and relied on the information contained in the Loan Submission Schedule… Mr. Bartold's loan was inadvertently onboard as a modified term reverse mortgage loan").

Wells Fargo's practices regarding the investigation and correction of such errors would be relevant to Mr. Bartold's CUTPA claim, as they would help clarify whether this problem was a systemic one that extended beyond only Mr. Bartold's claims.  Accordingly, Wells Fargo is ordered to produce any existing policies governing the resolution of customer disputes in connection with reverse mortgages.

To the extent that policies or training manuals for resolving customer disputes do not exist, the Court notes that Wells Fargo's failure to implement specific procedures or practices in this area does not mean that Wells Fargo is not required to fulfill its discovery obligations under Rule 26.  Wells Fargo will not be required to produce the other policies requested in Mr. Bartold's amended RFPs, as the additional policies exceed the scope of Mr. Bartold's claims.

**2. Communications and System Notes (Second RFP Nos. 6-8, 16)**

Mr. Bartold seeks to compel production of all system notes, database entries and communications requested in his second Requests for Production Nos. 6-8 and 16.  Wells Fargo objects to the production of these documents, arguing that the documents are irrelevant and not proportional to Mr. Bartold's claims.  Def. Mem. in Opp. at 15-16.  To the extent that such documents directly discuss Mr. Bartold's loan, however, these notes may be relevant to Mr. Bartold's claims, as they could reveal additional information about how Wells Fargo handled Mr. Bartold's complaints and why it responded in the way it did.  Accordingly, Wells Fargo is

ordered to produce any non-privileged system notes, database entries or communications pertaining directly to Mr. Bartold's loan and the various recalculations of the amounts owed to Mr. Bartold.

### 3. Documentation Regarding Interrogatory Responses (Second RFP Nos. 18-21, 28-38)

Mr. Bartold also seeks production of the documents relied on in preparing responses to interrogatories 3, 5-7, 9-11 and 14-24. Pl. Mem. in Supp. at 28. According to Mr. Bartold, these interrogatory responses referenced documents that have not yet been provided. Wells Fargo argues that it has not provided any responses to interrogatories 20-24, thus it is "premature" to request documents relied on in connection with those responses. Def. Mem. in Opp. at 23.

To the extent that the requested documents are not privileged and relate directly to Mr. Bartold's loan, the documents are discoverable. Wells Fargo is ordered to produce the documents relied on in connection with all listed interrogatories, including interrogatories 20-24 once those responses are produced.

### 4. Outstanding Interrogatories (Interr. Nos. 20-24)

Finally, Mr. Bartold seeks to compel responses to all outstanding interrogatories (Interr. Nos. 20-24). These interrogatories seek relevant information pertaining to Wells Fargo's investigations of Mr. Bartold's mortgage and its reasoning for its decisions regarding the categorization of this mortgage. *See* Interr. At 15, White Dec. Ex. F, ECF No. 69-8. In addition to its general objections regarding relevance and undue burden, Wells Fargo argues that these interrogatories are compound and include more than one question, and thus they exceed the permissible number of interrogatories. Def. Mem. in Opp. at 18-19.

To the extent that these interrogatories are in fact compound and in excess of the 25 interrogatories typically permitted, the Court now *sua sponte* grants leave for Plaintiff file

additional interrogatories.  *See* Fed. R. Civ. P. 33(a)(1) ("Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(2)").  Wells Fargo is ordered to respond in full to interrogatories 20-24.

### B.  Motion for Protective Order

Wells Fargo has objected to all 34 of the proposed deposition topics reflected in Mr. Bartold's Rule 30(b)(6) deposition notice, arguing that the proposed topics are "overbroad" and "burdensome."  Def. Mem. in Supp. at 1.  Disputed topics include Wells Fargo's knowledge of the facts pled in Mr. Bartold's complaint; Wells Fargo's actions in connection with servicing Mr. Bartold's mortgage; the disciplinary records of the various Wells Fargo employees who were involved with Mr. Bartold's mortgage; and record-keeping practices applicable to Mr. Bartold's mortgage.  *See* Pl. 30(b)(6) Notice, Bizar Dec. Ex. A, ECF No. 71-2.  Wells Fargo's [70] Motion for Protective Order is granted in part and denied in part.

#### 1.  Wells Fargo Policies and Procedures (Topics 14-16, 19, 21, 26-27)

Mr. Bartold seeks to inquire about a series of policies and procedures similar to those requested in Mr. Bartold's Second RFP Nos. 47-54.  For the reasons described above, this topic will be narrowed to only those policies and procedures governing the resolution of customer complaints regarding reverse mortgages at the time of the alleged actions in connection with Mr. Bartold's reverse mortgage.  Accordingly, Wells Fargo's motion for a protective order is granted with respect to Topics 14-16, 21 and 26-27.  The motion is denied with respect to Topic 19.

#### 2.  Wells Fargo Record-Keeping Practices (Topics 17-18)

Mr. Bartold also seeks to inquire into the record-keeping practices applicable Mr. Bartold's loan.  Wells Fargo argues that this topic is irrelevant and not proportional, claiming

that it would impose an "unreasonable if not impossible burden on Wells Fargo" to prepare a corporate designee to testify on these matters. Def. Mem. in Supp. at 26. The Court disagrees.

Mr. Bartold seeks information relevant to his claims, particularly given Wells Fargo's admission that erroneous record-keeping on the part of its employees essentially led to the underlying dispute between the parties. These sorts of procedures are properly discoverable in the context of a 30(b)(6) deposition. *See, e.g. Cipriani v. Dick's Sporting Goods, Inc.*, No. 3:12 CV 910 JBA, 2012 WL 5869818, at *1 (D. Conn. Nov. 19, 2012) (allowing a 30(b)(6) corporate designee to testify regarding wage and hour record keeping). Wells Fargo's motion for a protective order is denied with respect to Topics 17 and 18.

### 3. Employment and Disciplinary Records (Topics 11, 22, 31)

Mr. Bartold seeks information regarding the "employment and disciplinary history of the individual(s) that onboarded Plaintiff's reverse mortgage[.]" Pl. 30(b)(6) Notice at 4. Wells Fargo objects, arguing that this information violates the privacy rights of its employees and citing a Connecticut statute that prohibits disclosure of personnel information in the absence of either written authorization from employees or a court order. Def. Mem. in Supp. at 20-21. The Court disagrees.

This topic is sufficiently narrow, as it is limited to only those employees who were involved in the onboarding process for Mr. Bartold's reverse mortgage. Furthermore, any sensitive information can be sealed from public access as needed to ensure the protection of employee privacy, and the parties are directed forthwith to draft and propose to the Court any such order by Friday, January 13, 2017. Accordingly, Wells Fargo's motion for a protective order is denied with respect to Topics 11, 22 and 31.

### 4. Similar Complaints from Other Customers (Topics 32-33)

Mr. Bartold's 30(b)(6) Notice also originally sought discovery of "[a]ll instances from 2008 to the present" involving mistakes made by Wells Fargo in connection with boarding, calculating, or making payments for a reverse mortgage plan, as well as "[a]ll lawsuits and customer complaints… for the period from 2008 to the present alleging" such errors. Pl. 30(b)(6) Notice at 6-7. Mr. Bartold has now narrowed these requests to focus only on specific customer complaints, lawsuits, and previously identified concerns of which Wells Fargo's compliance department was aware from 2009 to 2014. Def. Mem in Supp. at 30. Wells Fargo argues that these topics are not "proportional to the needs of this case" and that they would impose "impossible burdens" on Wells Fargo. *Id.* at 31-32. The Court disagrees.

In Topics 32 and 33, Mr. Bartold seeks to understand whether the Wells Fargo compliance department knew of similar mistakes that had been made in other customers' reverse mortgages at the time that Wells Fargo engaged in the underlying dispute with Mr. Bartold. This would not be "impossible" for Wells Fargo to prepare; rather, it would simply require Wells Fargo to determine whether it was aware of any relevant prior instances where mistakes were made in connection with the onboarding or correction of a reverse mortgage. This information is relevant to Mr. Bartold's CUTPA claim, as it would help demonstrate whether the problems faced by Mr. Bartold raised broader systemic issues as to how Wells Fargo conducted its reverse mortgage business.

Wells Fargo's motion for a protective order is denied in part with respect to Topics 32 and 33. Deposition questioning will be permitted with respect to specific customer complaints or lawsuits of which Wells Fargo's compliance department is already aware, if any, involving mistakes allegedly made by Wells Fargo in connection with onboarding, calculating or making

payments for a reverse mortgage. Questioning will not be permitted with respect to errors or lawsuits of which Wells Fargo is not currently aware.

### 5. Communications and Investigations Concerning Mr. Bartold; Servicing of Mr. Bartold's Loan; Allegations in Complaint (Topics 1-10, 12-13, 20, 23-25, 28-30)

The remainder of Mr. Bartold's proposed deposition topics relate to the specific actions taken by Wells Fargo in connection with Mr. Bartold's reverse mortgage. As these topics relate directly to the factual allegations made by Mr. Bartold, they are neither irrelevant nor unduly burdensome. Accordingly, Wells Fargo's motion for protective order is denied with respect to Topics 1-10, 12-13, 20, 23-25, and 28-30.[2]

### III. Conclusion

Mr. Bartold's [69] Motion to Compel and Wells Fargo's [70] Motion for Protective Order are each **GRANTED IN PART AND DENIED IN PART**. Wells Fargo is ordered to respond to all outstanding RFPs and Interrogatories except for First RFP Nos. 47-48 and 51-54. Mr. Bartold is permitted to proceed with the 30(b)(6) deposition on all topics except for Topics 14-16, 21 and 27, as discussed above. Also, to the extent that a more specific protective order is needed regarding any employee disciplinary records to be provided in discovery, the parties are required to work together and submit any such proposed order by January 13, 2017.

---

[2] Topic 34 of Mr. Bartold's 30(b)(6) Notice originally sought information regarding the "scope of Wells Fargo's reverse mortgage origination and servicing business and its revenue, organizational structure, and key employees at the time of the events described in the Plaintiff's complaint." Pl. 30(b)(6) Notice at 7. This topic has since been substituted for an inquiry regarding Wells Fargo's answers to Mr. Bartold's complaint: "Wells Fargo's corporate knowledge of facts concerning or refuting ¶¶ 31, 32, 36, 37, 41, 43, 44, 49, 56, 57, 59, 62, 69, 79 of Plaintiff's Complaint, which it denies in its Answer, and its Second through Fourteenth Special Defenses, excluding any privileged information." Def. Mem. in Supp. at 22. As this inquiry relates directly to the factual allegations in Mr. Bartold's Complaint, this topic will be permitted as amended.

SO ORDERED this 30th day of December at Bridgeport, Connecticut.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

Case 3:14-cv-00865-VAB   Document 77   Filed 12/30/16   Page 13 of 13